## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE APPLICATION OF THE UNITED STATES OF AMERICA FOR AN ORDER PURSUANT TO 18 U.S.C. § 2705(b) | **Case No. 1:17-MC-02490** <br><br> <u>**Honorable Chief Judge Beryl A. Howell**</u> <br><br> <u>**FILED UNDER SEAL**</u> |

### *EX PARTE* OBJECTION TO THE MAGISTRATE JUDGE'S DENIAL OF AMENDED APPLICATION OF THE UNITED STATES FOR AN ORDER PURSUANT TO 18 U.S.C. § 2705(b)

The United States of America, through undersigned counsel, respectfully submits, under seal, its objection to United States Magistrate Judge Deborah A. Robinson's December 26, 2017, order denying the United States's amended application for an order under the Stored Communications Act ("SCA"). The government's requested order would, pursuant to 18 U.S.C. § 2705(b), direct Airbnb, Inc. ("Airbnb"), not to disclose the existence of a subpoena that was issued in compliance with 18 U.S.C. § 2703(c)(2).

On October 16, 2017, Magistrate Judge Robinson denied the government's request, concluding that Airbnb "is a user, rather than a provider, of electronic communication service." Order dated October 6, 2017. On December 12, 2017, the government filed an amended application setting forth the factual and legal basis for its request pursuant to the SCA. On December 26, 2017, Magistrate Judge Robinson again denied the government's amended application, citing her October 11 order.

The government respectfully submits that Airbnb does, as a factual matter within the plain meaning of the text, provide users "the ability to send or receive wire or electronic communications" though its electronic messaging service, and that it therefore provides (and is a provider of) an "electronic communication service" ("ECS"), as that term is used in 18 U.S.C.

§ 2703 and § 2705, with respect to legal process issued pursuant to those provisions of the SCA.

The subpoena at issue seeks records "of a subscriber to or customer of," 18 U.S.C. § 2703(c)(2),

an ECS, and Airbnb is – for purposes of the service at issue and the order requested – the provider

of that ECS. This is so whether Airbnb also provides other services (which it does) and whether

Airbnb also uses ECS provided by others (which it does). As such, the SCA's provisions limiting

disclosure apply to subscriber records generated in connection with ECS regardless of the

provider's primary business, that is, regardless of what other services the provider uses or provides.

The Government respectfully objects to Magistrate Judge Robinson's order to the contrary.

## I.   **FACTUAL AND PROCEDURAL BACKGROUND**

### A.  **Procedural History**

In August 2017, as part of its investigation in this case, the United States submitted an

application for a nondisclosure order under 18 U.S.C. § 2705(b) directed at Airbnb. United States

Magistrate Judge Robin M. Meriweather granted the government's request and issued a

nondisclosure order that directed Airbnb not to disclose the existence of a subpoena which sought

subscriber information under 18 U.S.C. § 2703(c)(2). *In Re Application of the United States of*

*America for an Order Pursuant to 18 U.S.C. § 2705(b)*, No. 1:17-mc-02011 (D.D.C. filed August

21, 2017) (under seal). The government served the order and subpoena on Airbnb, and Airbnb

provided responsive records.

In October 2017, the United States submitted a second (and virtually identical) application

for a nondisclosure order regarding a subpoena that sought information under

18 U.S.C. § 2703(c)(2). This subpoena sought the same subscriber information as the August

subpoena, but for a different date range. On October 11, 2017, Magistrate Judge Robinson denied

the application without prejudice, finding that Airbnb was "a user, rather than a provider, of electronic communication service, and that an order pursuant to Section 2705(b) thus cannot lie."

On December 12, 2017, the government filed an amended application setting forth the factual and legal basis for its request pursuant to the SCA.  On December 26, 2017, Magistrate Judge Robinson denied the government's amended application, citing her October 11 order.

## B. **Background on Airbnb**

Airbnb, a corporation based in San Francisco, California, provides an internet-based service that allows property owners to rent accommodations, including their personal homes, to people who are seeking accommodations.  It operates the service through a website and through a smartphone application.  It describes itself as "a trusted community marketplace for people to list, discover, and book unique accommodations around the world—online or from a mobile phone or tablet." *See Airbnb, About us, available at https://www.airbnb.com/about/about-us* (last visited Jan. 12, 2018).  The service allows property owners to advertise their properties for rent, using photos and descriptions that they provide.  In turn, travelers (or effectively, lessees) can use the service to find such properties, research the properties through user reviews and communications with the prospective lessor, and ultimately, rent a property on short-term or long-term basis.  To use this service, all users of Airbnb (both owners and prospective renters) must create an individualized, verified personal account. *See Airbnb, How do I create an account, available at https://www.airbnb.com/help/article/221/how-do-i-create-an-account* (last visited Jan. 12, 2018).

As an important part of its service, Airbnb "maintain[s] a smart messaging system so hosts and guests can communicate with certainty." *See Airbnb, How it works, available at https://www.airbnb.com/help/getting-started/how-it-works* (last visited Jan. 12, 2018).  Using this messaging system, users seeking to book accommodations from a particular host can send an

electronic message directly to the host, including messages with questions about the host or the accommodations. *See Airbnb, How do I contact a host before booking a reservation?, available at https://www.airbnb.com/help/article/147/how-do-i-contact-a-host-before-booking-a-reservation* (last visited Jan. 12, 2018). To ensure security – and so that the parties can build trust in each other before providing one another with their true identities or contact information – initial messages must be sent through the Airbnb online-messaging service. *See Airbnb, How do I view and send messages?, available at https://www.airbnb.com/help/article/145/how-do-i-view-and-send-messages* (last visited Jan. 12, 2018); *see also Airbnb, Why should I pay and communicate through Airbnb directly?, available at https://www.airbnb.com/help/article/209/why-should-i-pay-and-communicate-through-airbnb-directly* (last visited Jan. 12, 2018).[1] As Airbnb explains on its website, "[p]aying or communicating outside of Airbnb also makes it harder for us to protect your information and puts you at greater risk of fraud and other security issues." *Airbnb, Why should I pay and communicate through Airbnb directly?, available at https://www.airbnb.com/help/article/209/why-should-i-pay-and-communicate-through-airbnb-directly* (last visited Jan. 12, 2018).

On its website, Airbnb holds itself out as an ECS provider. *See How does Airbnb respond to data requests from law enforcement: Requests from US Law Enforcement, available at https://www.airbnb.com/help/article/960/how-does-airbnb-respond-to-data-requests-from-law-enforcement#RequestsfromUS* (last visited Jan. 12, 2018). Airbnb specifically states that "1) "[a] valid trial, grand jury or administrative subpoena is required to compel the disclosure of basic subscriber records (defined in 18 USC § 2703(c)(2))"; 2) "[a] court order issued pursuant to 18 USC §2703(d) is required to compel the disclosure of certain other records pertaining to an

---

[1] After initial contact, Airbnb users may provide their personal contact information to each other, and then communicate directly over the phone or e-mail, if they prefer to do so.

account, not including contents and communications"; and, 3) "[f]or content of communications, a search warrant issued under the procedures described in the US Federal Rules of Criminal Procedure (or equivalent state warrant procedures) is required."). On January 5, 2018, counsel for Airbnb represented to the government that Airbnb considered itself a provider of an electronic communication service and/or a remote computing service ("RCS") under the SCA.[2] Counsel for Airbnb further represented that, if served with a nondisclosure order under 18 U.S.C. § 2705(b) and a subpoena that complies with the SCA, Airbnb would not challenge the applicability of 18 U.S.C. §§ 2711 and 2510.[3]

## II. AIRBNB IS A PROVIDER OF ECS FOR PURPOSES OF THIS SCA SUBPOENA AND NONDISCLOSURE ORDER

Airbnb's messaging service allows users to send electronic communications to other users, so that they can communicate with each other about listings on Airbnb. By providing that messaging service, Airbnb is a provider of an ECS that falls squarely within definition of that term

---

[2] Although the government did not discuss with Airbnb why it took the position that it provides an ECS and/or a RCS, there are several motives a business might have to take that position (separate from the question at issue here, that is, whether the service constitutes an ECS and/or RCS). First, as a public-relations matter, many businesses tout their respect for customer privacy and, relatedly, their policies of holding the government to any additional requirements under the SCA. Second, a business might conclude that coverage as an ECS/RCS would reduce the volume of legal process it receives from the government, given the additional procedural requirements government must meet for various SCA legal process. Third, the SCA requires the government to reimburse cost in producing records requested thereunder. Finally, treating its customer records as covered under SCA provides a business with explicit liability protections should a user protest the disclosure of his or her information. That is, a business might reasonably determine that it should err on the side of caution and treat customer records as covered by the SCA where the business could reasonably be considered an ECS or RCS.

[3] In the event that the Court wishes to seek additional detail about Airbnb's position, the government would not oppose any request that would permit Airbnb to participate in proceedings concerning the specific legal issues raised in this objection. In addition, the government would not oppose a limited unsealing of these proceedings, so long as any identifying information concerning the Airbnb account at issue remains sealed, together with the government's factual representations about its investigation.

in the SCA. Subscriber records relating to that service are therefore covered by the SCA; the government may obtain records concerning that service using SCA process (including nondisclosure orders); and the government may do so by serving Airbnb, because Airbnb provides the relevant service and is therefore, a "provider of an electronic communications service" as that term is used in 18 U.S.C. §§ 2703 and 2705.

### A. The Statutory Framework Under ECPA and the SCA

Congress enacted the SCA as Title II of the Electronic Communications Privacy Act of 1986 ("ECPA"). PL 99–508 (HR 4952), PL 99–508, October 21, 1986, 100 Stat 1848. Congress enacted ECPA (of which the SCA is a part) to, among other things, establish disclosure mechanisms for electronic communications. Congress recognized that emerging technologies effectively required consumers and other users to entrust third parties with private information, and it enacted ECPA to regulate disclosure of that information, similar to the protections and disclosure mechanisms that applied to telephone calls and mail matter. *See* H. Rep. 99-647 at 17 (1986) (existing law "appears to leave unprotected an important sector of the new communications technologies"); S. Rep. 99-541 at 3 (1986) (the contents of communications and other electronically stored information is typically "subject to control by a third party computer operator," and thus "may be subject to no constitutional privacy protection.") S. Rep. 99-541 at 5 (noting that U.S. mail and voice calls over common carriers were protected by the constitution and by federal statutes, but there were "no comparable Federal statutory standards to protect the privacy and security of communications transmitted by ... new forms of telecommunications and computer technology."). *See also Priority Payment Sys., LLC v. Intrend Software Sols.*, No. 1:15-CV-04140-AT, 2016 WL 8809877, at *5 (N.D. Ga. Nov. 28, 2016) ("After the proliferation of electronic communications in the 1980s, legislators became concerned about the adequacy of

existing Fourth Amendment and statutory protections and set out to enact new legislation regulating government and private interception of these new media.") (citations omitted).

1. The Text and Structure of the SCA

The SCA addressed these concerns by regulating disclosure of electronic information that users entrust to third parties. Congress identified two categories of such information: information relating to an ECS and information relating to an RCS. As explained by one commentator, the SCA provided greater protections for users than otherwise existed:

> The SCA . . . offer[s] network account holders a range of statutory privacy rights against access to stored account information held by network service providers. The statute creates a set of Fourth Amendment-like privacy protections by statute, regulating the relationship between government investigators and service providers in possession of users' private information. It does this in two ways. First, the statute creates limits on the government's ability to compel providers to disclose information in their possession about their customers and subscribers. Although the Fourth Amendment may require no more than a subpoena to obtain e-mails, the statute confers greater privacy protection. Second, the statute places limits on the ability of ISPs to voluntarily disclose information about their customers and subscribers to the government. Although the private search doctrine of the Fourth Amendment allows private providers to make such disclosures, the SCA imposes limitations on the circumstances in which such a disclosure can occur.

Orin S. Kerr, *A User's Guide to the Stored Communications Act, and A Legislator's Guide to Amending It* ("*User's Guide*"), 72 Geo. Wash. L. Rev. 1208, 1212-13 (2004) (footnotes omitted).

The SCA provides the relevant protections by prohibiting unauthorized access to facilities through which an ECS is provided, under 18 U.S.C. § 2701; limiting the voluntary disclosure of customer data by any "person or entity providing an electronic communication service to the public" or by any "person or entity providing a remote communication service to the public," under 18 U.S.C. § 2702; providing for law enforcement requests for information derived from an ECS or an RCS, under 18 U.S.C. § 2703; providing a mechanism for backup preservation of certain information under 18 U.S.C. § 2704; providing for delayed notice and nondisclosure orders, under

18 U.S.C. § 2705; providing for cost reimbursements, under 18 U.S.C. § 2706; and by describing

the remedies (including private civil actions) for violations of the SCA, under 18 U.S.C. §§ 2707

and 2708.   Finally, 18 U.S.C. § 2711 provides definitions for terms used in the SCA, first by

incorporating definitions used 18 U.S.C. § 2510 (which provides the definition for ECS), and then

by providing definitions for other terms, including RCS.

    2.  Statutory Definitions Under ECPA and the SCA

      ECPA and the SCA provide specific definitions for covered ECS and RCS.   An ECS is

"*any service* which provides to users thereof the ability to send or receive wire or electronic

communications." 18 U.S.C. § 2510(15) (emphasis added).   The term "user" means "any person

or entity who . . . uses an electronic communications service; and . . . is duly authorized by the

provider of such service to engage in such use." 18 U.S.C. § 2510(13).   An RCS is "'the provision

to the public of computer storage or processing services by means of an electronic communications

system,' *id*. § 2711(2), with the term 'electronic communications system' further defined to mean

'any wire, radio, electromagnetic, photooptical or photoelectronic facilities for the transmission of

electronic communications, and any computer facilities or related electronic equipment for the

electronic storage of such communications,'" *id*. § 2510(14)." *In re Search of Info. Associated*

*with [redacted]@gmail.com that is Stored at Premises Controlled by Google, Inc.*, No. 16-MJ-

00757 (BAH), 2017 WL 3445634, at *6 n.10 (D.D.C. July 31, 2017).[4]

      When Congress enacted ECPA, it defined the scope of regulations limiting disclosure

according to the types of services used.   Congress did not attempt to classify the scope of ECPA

---

[4] While an RCS must, by definition, be a service that is provided "to the public," 18 U.S.C. § 2711(2), there is no such requirement in the definition of an ECS.   18 U.S.C. § 2510(15). However, some provisions of the SCA apply only to ECS available "to the public." *See, e.g.*, 18 U.S.C. § 2702(a)(1). *See, e.g., Andersen Consulting LLP v. UOP*, 991 F. Supp. 1041 (N.D. Ill. 1998) (while UOP provided e-mail access to plaintiff's employees during a period of time, UOP did not provide ECS "to the public," and was therefore beyond the scope of 2701(a)(1)).

or the SCA based on the types of businesses that provided those services. Indeed, in amending the Wiretap Act through ECPA, Congress appeared to have been wary of disclosure protections that depended on the nature of the company that provided the service. *See* S. Rep. 99-541 at 3 ("It does not make sense that a phone call transmitted via common carrier is protected by the current federal wiretap statute, while the same phone call transmitted via a private telephone network ... would not be covered by the statute").

Notably, while several sections of the SCA use the phrases "provider of electronic communication service," "provider of a remote communication service," and "provider of remote computing service or electronic service to the public," those phrases are not further defined by the SCA or ECPA. Similarly, while Congress provided a particular definition for the term "user," 18 U.S.C. § 2510(13), it did not provide a specific definition for the term "provider." The government submits that the term "provider," should therefore be interpreted according to its ordinary, contemporary, common meaning. *See, e.g., Perrin v. United States*, 444 U.S. 37, 42 (1979) ("A fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning."). One dictionary, for example, defines provider as "one that provides." Merriam-Webster Dictionary, available at *https://www.merriam-webster.com/dictionary/provider* (last visited Jan. 17, 2018).

3.   "Providers" of ECS are not Limited to Particular Types of Businesses

Courts have regularly applied the SCA's definition of an ECS in the context of corporate entities whose primary business function is to provide telecommunications services. Thus, for example, "telephone companies and electronic mail companies" have repeatedly been held to be ECS providers. *See* S. Rep. No. 99-541 (1986), reprinted in 1986 U.S.C.C.A.N. 3555, 3568; *see also In re Application of United States*, 509 F. Supp. 2d 76, 79 (D. Mass. 2007) (cell phone service

provider is an ECS provider); *Freedman v. America Online, Inc.*, 325 F. Supp. 2d 638, 643 n.4 (E.D. Va. 2004) (email service provider is an ECS provider).[5] However, Congress explicitly recognized that other types of companies (including providers of RCS) might also provide ECS. *See* S. Rep. No. 99-541 at 14 ("Existing telephone companies and electronic mail companies are providers of electronic communication services. Other services like remote computing services may also provide electronic communication services.").

The courts have likewise repeatedly recognized that the definition of an ECS "captures *any* service that stands as a conduit for the transmission of . . . electronic communications *from one user to another.*" *Council on Am.-Islamic Relations Action Network, Inc. v. Gaubatz*, 793 F. Supp. 2d 311, 334 (D.D.C. 2011) (citation and internal quotation marks omitted) (emphasis added), and that therefore a wide array of organizations can be "providers" of ECS services. *See, e.g., Fraser v. Nationwide Mut. Ins. Co.*, 352 F.3d 107, 114-15 (3d Cir. 2004) (insurance company was an ECS provider because it provided email service allowing employees to communicate with each other); *United States v. Mullins*, 992 F.2d 1472, 1478 (9th Cir. 1993) (airline that provided travel agents with computerized travel reservation system accessed through separate computer terminals could be a provider of ECS); *Kaufman v. Nest Seekers, LLC*, No. 05 CV 6782 (GBD), 2006 WL 2807177, at *6 (S.D.N.Y. Sept. 26, 2006) (website providing resources to real estate brokers contained an

---

[5] *See also Freedman v. America Online, Inc.*, 325 F. Supp. 2d 638 (E.D. Va. 2004) (concluding that America Online is an ECS provider); *In re DoubleClick Inc. Privacy Litig.*, 154 F. Supp. 2d 497 (S.D.N.Y. 2001) (stating that ISPs such as America Online, Juno, and UUNET, as well as telecommunications companies whose cables and phone lines carry traffic are within the definition of ECS); *Matter of Application of United States of America*, 45 F. Supp. 3d 1 (D.D.C. 2014) (accepting that Yahoo is an ECS); *see also Warshak v. United States*, 532 F.3d 521 (6th Cir. 2008) (holding that the definition of an ECS provider includes "basic e-mail services"); *Theofel v. Farey–Jones*, 359 F.3d 1066 (9th Cir. 2004) (holding that Netgate, an e-mail provider, is "undisputedly" an ECS); *United States v. Steiger*, 318 F.3d 1039 (11th Cir. 2003) (holding that phone companies and internet service providers are ECS providers); *United States v. Weaver*, 636 F.Supp.2d 769 (C.D. Ill. 2009) (concluding that Microsoft, which provides email services, is an ECS).

"electronic bulletin board" for use by subscribers and thus qualified as an ECS).  In other words,

"an online business or retailer may be considered an [ECS provider] if the business has a website

that offers customers the ability to send messages or communications to third parties." *Becker v.*

*Toca*, 2008 WL 4443050, at *4 (E.D. La. Sept. 26, 2008).

### 4.  Companies That "Use" An ECS vs. Companies That Provide An ECS

While the text of the SCA makes clear that any company which provides an ECS is subject

to the disclosure mechanisms of the statute for the electronic communications service that it

provides, it is equally clear that a company does not become an ECS "provider" merely because it

does business over the internet.  For example, in *Crowley v. CyberSource Corp.*, 166 F. Supp. 2d

1263, 1270 (N.D. Cal. 2001), the plaintiff argued that Amazon.com was an ECS provider, based

on the mere fact that Amazon received communications from the plaintiff.  *Id.* (rejecting "the

argument that because Amazon receives e-mails from Crowley it provides an electronic

communication service.").  By doing business over the internet, Amazon.com received electronic

communications from its customers (and, presumably, sent electronic communications as well),

but as relevant to that complaint, Amazon.com it did not provide anyone with the *ability* to send

and receive communications, either to Amazon.com or to third party users.  *See* 18 U.S.C.

§ 2510(15) (defining an ECS as one which provides "the ability to send or receive"

communications).  The courts have reached similar conclusions in a variety of cases.  For example,

in deciding *In re Jetblue Airways Corp. Privacy Litigation*, 379 F. Supp. 2d 299, 309-10 (E.D.N.Y.

2005), the court explained that "companies that provide traditional products and services over the

Internet, as opposed to Internet access itself, are not 'electronic communication service' providers

within the meaning of the ECPA."[6] *See also Dyer v. Northwest Airlines Corp.*, 334 F. Supp. 2d

---

[6] Notably, at the time of the 2005 *Jetblue* decision, Jetblue did not provide customers with Internet access, a service which Jetblue now offers. *See, e.g., Business Travel: Where to Find Internet on*

1196, 1199 (D.N.D. 2004) (definition of an ECS "does not encompass businesses selling traditional products or services online"); *Keithly v. Intelius Inc.*, 764 F. Supp. 2d 1257, 1271-72 (W.D. Wash. 2011) (holding that a company which provided an on-line information service that enabled employee background checks was not an ECS provider; "a company that uses electronic communications services to conduct its business on the internet but does not provide the wire or electronic communications services utilized by its customers was not an internet service provider, a telecommunications company, or a public carrier of any kind, and is therefore was not an "electronic communications service" subject to the protections of the SCA").[7]

### B. Airbnb is a "Provider of an ECS" Because it Provides an ECS to Its Customers

Airbnb "maintain[s] a smart messaging system so hosts and guests can communicate with certainty." *See Airbnb How it works, supra.* This electronic messaging service allows Airbnb users to send electronic messages to other users, and it also allows them to receive electronic messages from other users. In other words, Airbnb's messaging service "provides to users thereof the ability to send [and] receive ... electronic communications," 18 U.S.C. § 2510(15). Thus, Airbnb's electronic messaging service falls within the plain meaning of the ECS definition in 18 U.S.C. § 2510(15). Thus, the government properly seeks SCA process to obtain records related to that

---

*Flights*, CBS News, *available at https://www.cbsnews.com/news/business-travel-where-to-find-internet-on-flights/* (April 5, 2010) (last visited January 14, 2018).

[7] Courts have reached different conclusions about whether companies which allow their employees to use e-mail and other telecommunications services are providers of ECS under the SCA. *Compare, e.g., Priority Payment Systems, LLC v. Intrend Software Solutions*, 2016 WL 8809877 at *6 (N.D. Ga., Nov. 8, 2016) ("Simply because Priority provides telephone, internet, and email services to its employees in order to perform their job duties does not make Priority an electronic communication service provider as defined by the SCA."), with *Fraser*, 352 F.3d at 114-115 (holding that Nationwide Insurance was an ECS provider with respect to its employee e-mail system). However, those questions are not presented here, and the Court need not resolve them to decide this case, because the relevant Airbnb messaging service provides third-party users the ability to send and receive communications to and from other third-party users.

service from Airbnb, because Airbnb is the "provider" of that ECS.

## C. The Requested SCA Nondisclosure Order is Proper Because the Government's Subpoena Seeks Records Concerning a User of Airbnb's ECS

When the government issues process under the SCA, under certain circumstances it may obtain a nondisclosure order under 18 U.S.C. § 2705(b). Section 2705(b) provides in relevant part that "[a] governmental entity acting under section 2703 . . . may apply to a court for a [nondisclosure] order."

Here, the government is acting under 18 U.S.C. § 2703(c)(2). While Airbnb may also provide other services and maintain other records that fall outside the scope of the SCA, the subpoena in this case is squarely directed to records relating to a user of Airbnb's ECS (*i.e.*, Airbnb's electronic messaging service). That is, the subpoena seeks the basic subscriber information described in 18 U.S.C. § 2703(c)(2) for an Airbnb user/customer, who (by virtue of his/her registration of an account with Airbnb) is a user/account holder of Airbnb's electronic messaging service. That is, the requested records are properly the records "of a subscriber to or customer of such service," *i.e.*, an ECS. 18 U.S.C. § 2703(c)(2).

Had the subpoena sought solely payment records for rental transactions for a specific user account, this case would present a different issue. Such a distinction is important because, as described above, the SCA defines coverage as an ECS and/or RCS using a service-by-service (not a business-by-business analysis. Thus, a business that is covered as an ECS and/or RCS for certain electronic communications services may not be so for other services.[8]

---

[8] The aspects of Airbnb's service that allow property owners to post advertisements may constitute an electronic bulletin board service that is covered by the SCA; it may also constitute an RCS, because it allows property owners to store photographs and descriptions of their properties. This brief does not address those issues, because the government's applications to the Magistrate Judge focused on Airbnb's ECS messaging service, and because the subpoena's scope is limited to basic subscriber information concerning that ECS. In any event, to the extent that the Court concludes that the text of the government's subpoena should be clarified to address this point, the government

Because the subpoena is appropriately issued under the SCA, for the reasons above as well as the additional reasons set forth in the governments application and amended application for an order under 18 U.S.C. § 2705(b), the government is entitled to the requested nondisclosure order.

## CONCLUSION

WHEREFORE, the United States respectfully requests that the Court grant the government's request and issue the requested nondisclosure order under 18 U.S.C. § 2705(b).

Respectfully submitted,

JESSE K. LIU
UNITED STATES ATTORNEY
D.C. Bar Number 472845

By:   /s/
LUKE M. JONES, VA Bar 75053
JOCELYN BALLANTINE, CA Bar 208267
Assistant United States Attorneys
National Security Section
United States Attorney's Office
555 Fourth Street, N.W., 11th Floor
Washington, D.C.  20530
Telephone: 202-252-7066 (Jones)
Email: luke.jones@usdoj.gov

YOULI LEE, NY Bar 4064028
DEMIAN S. AHN, DC Bar 491109
JONATHAN P. HOOKS, DC Bar 468570
Assistant United States Attorneys
Cyber Crime Section
United States Attorney's Office
555 Fourth Street, N.W., 4th Floor
Washington, D.C.  20530
Telephone: 202-252-7705 (Lee)
Email: youli.lee@usdoj.gov

DATE: January 19, 2018

---

would agree to make appropriate modifications to the scope of records sought in the subpoena attachment.