## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE APPLICATION OF THE UNITED STATES OF AMERICA FOR AN ORDER PURSUANT TO 18 U.S.C. § 2705(b) | Misc. Action No. 17-2490 (BAH)<br><br>Chief Judge Beryl A. Howell<br><br>**UNDER SEAL** |

### MEMORANDUM OPINION

In October 2017, the government sought an order, pursuant to 18 U.S.C. § 2705(b) of the Stored Communications Act ("SCA"), 18 U.S.C. §§ 2701, *et seq.*, precluding Airbnb, Inc., from disclosing the existence of a grand jury subpoena to any person for a period of at least one year. *See* Application of the United States for Nondisclosure Order Pursuant to 18 U.S.C. § 2705(b) ("App."), ECF No. 1. This application, as well as an amended application providing additional background and argument demonstrating that "Airbnb qualifies as a 'provider' of an 'electronic communication service'" under the SCA, *see* Amended Application of the United States for Nondisclosure Order Pursuant to 18 U.S.C. § 2705(b) ("Amended App.") at 1, ECF No. 3, was denied by a Magistrate Judge on the ground that Airbnb is a "user, rather than a provider," of electronic communication services ("ECS") and remote computing services ("RCS"), and thus is not an entity covered by the SCA. *See* Order dated Oct. 6, 2017 ("First Order"), ECF No. 2; Order dated Dec. 22, 2017 ("Second Order"), ECF No. 4. Now pending before the Court is the government's *Ex Parte* Objection to the Magistrate Judge's Denial of Amended Application of the United States for an Order Pursuant to 18 U.S.C. § 2705(b) ("Obj."), ECF No. 6.

Whether an entity is an ECS or RCS provider, and regulated as such by the SCA, carries significant consequences: the SCA's statutory scheme bestows upon covered entities greater

responsibilities regarding the disclosure and safeguarding of their customers' electronic information, and each violation of that Act risks civil, criminal, and administrative penalties. *See* 18 U.S.C. §§ 2701(b), 2707(a)–(d). For the reasons stated herein, Airbnb is, for the purposes of the government's applications and objection, an ECS provider under the SCA by virtue of the electronic messaging system it provides to users of its service. Accordingly, the government's objection is sustained, the Magistrate Judge's order is reversed, and the government's application is granted.

## I. BACKGROUND

The procedural history of this matter is summarized briefly below, followed by a description of Airbnb's electronic communication services as relevant to the application at issue.

### A. Procedural History

The government filed its first application for an order, under 18 U.S.C. § 2705(b), on August 17, 2017, in a separately captioned matter, seeking an order precluding Airbnb from disclosing the existence of a grand jury subpoena. *See* Application of the United States for Nondisclosure Order Pursuant to 18 U.S.C. § 2705(b) ("August App.") at 1, *In re Application of the United States of America for an Order Pursuant to 18 U.S.C. § 2705(b)* ("*First Proceeding*"), No. 17-mc-2011, ECF No. 1. In support of this application, the government asserted that "Airbnb provides an 'electronic communications service,' as defined in 18 U.S.C. § 2510(15), and/or 'remote computing service,' as defined in 18 U.S.C. § 2711(2)," but did not provide additional information about the specific Airbnb services at issue. *Id.* ¶ 4. That application was summarily granted by a Magistrate Judge the next day. *See* Order dated Aug. 18, 2017, *First Proceeding*, No. 17-mc-2011, ECF No. 2. The government then served the order and subpoena on Airbnb, and Airbnb subsequently produced responsive records. Obj. at 2.

The government filed a second application on October 4, 2017, again requesting an order under § 2705(b) precluding Airbnb from disclosing the existence of another grand jury subpoena and again asserting that Airbnb is a provider of ECS or RCS, as defined by the SCA. App. ¶¶ 4–6. Like the August application, the second application expressly noted that the government's investigation had revealed reason to believe that specific Airbnb user accounts were being used to facilitate violations of federal law. *Id.* ¶ 2. Aside from certain differences in the facts attendant to each application, the August and October applications were identical. Nevertheless, the latter application was denied on October 6, 2017, by a different Magistrate Judge, who concluded that "Airbnb, Inc. is a user, rather than a provider, of electronic communication service, and that an order pursuant to Section 2705(b) thus cannot lie." First Order at 1.

On December 4, 2017, the government filed an amended application for a § 2705(b) order. *See* Amended App. at 1. Like the original application, the amended application sought "the same basic subscriber information from Airbnb as the August 2017 subpoena, but it requested that information for a different time period." *Id.* ¶ 6. This time, the government included "additional background and argument demonstrating that, in this case, Airbnb qualifies as a 'provider' of an 'electronic communication service'" under the SCA. *Id.* at 1. Specifically, the government averred that "Airbnb provides an electronic messaging system that allows its users (guests and hosts) to communicate directly with each other (and not simply with Airbnb itself)," and that, by providing this service, "Airbnb 'provides to its users the ability to send or receive . . . electronic communications' to and from other users, and therefore acts as an ECS provider." *Id.* ¶ 10 (quoting 18 U.S.C. § 2510(15)) (alteration in original). The government also noted that, "[c]onsistent with the fact that Airbnb provides an online messaging system through which hosts and guests communicate, Airbnb holds itself out as an ECS provider in soliciting

3

law enforcement requests for user information under 18 U.S.C. § 2703." *Id.* ¶ 4.  Nevertheless, the amended application was denied on December 22, 2017, for reasons "consistent with the Order" denying the original application.  Second Order at 1.  The government now objects to the Magistrate Judge's denial of the amended application.

  **B.**  **Background Concerning Airbnb**

Airbnb, a corporation based in San Francisco, California, provides an internet-based service through a website and a smartphone application that allows property owners to rent accommodations, including their personal homes, to people seeking accommodations.  Obj. at 3.  The company describes itself as "a trusted community marketplace for people to list, discover, and book unique accommodations around the world—online or from a mobile phone or tablet." *About Us*, AIRBNB, https://www.airbnb.com/about/about-us (last visited January 26, 2018).  Property owners use the website and the application to advertise their properties for rent with user-provided photographs and descriptions.  Obj. at 3.  Prospective customers may use the service to find properties, research properties through user reviews and communications with prospective hosts, and rent properties on short-term or long-term bases.  *Id.*

To use this service, all Airbnb users—whether customers or hosts—must create individualized, verified personal accounts.  *Id.*; *see also How Do I Create an Account?*, AIRBNB, https://www.airbnb.com/help/article/221/how-do-i-create-an-account (last visited January 26, 2018); *What Are the Requirements to Book on Airbnb?*, AIRBNB, https://www.airbnb.com/help/article/1170/what-are-the-requirements-to-book-on-airbnb (last visited January 26, 2018).  A central component of each user's account is the "smart messaging system," which enables "hosts and guests [to] communicate with certainty." *How It Works*, AIRBNB, https://www.airbnb.com/help/getting-started/how-it-works (last visited January 26, 2018); *Why Should I Pay and Communicate through Airbnb Directly?*, AIRBNB, https://www.airbnb.com/help/article/209/why-

should-i-pay-and-communicate-through-airbnb-directly (last visited January 26, 2018). Customers seeking to reserve accommodations from particular hosts use this messaging system to send electronic messages directly to hosts to ask questions about the hosts or their accommodations and, eventually, to book reservations. *See How Do I Contact a Host before Booking a Reservation?*, AIRBNB, https://www.airbnb.com/help/article/147/how-do-i-contact-a-host-before-booking-a-reservation (last visited January 26, 2018); *How Do I Submit a Reservation Request?*, AIRBNB, https://www.airbnb.com/help/article/85/how-do-i-submit-a-reservation-request (last visited January 26, 2018). After using this system to initiate reservations and contact prospective hosts, Airbnb customers may provide their personal contact information to the hosts and communicate directly over the phone or via email, as they prefer. Obj. at 4 & n.1; *see also How Do I View and Send Messages?*, AIRBNB, https://www.airbnb.com/help/article/145/how-do-i-view-and-send-messages (last visited January 26, 2018). Importantly, these messages are sent from user to user, rather than from users to Airbnb itself. *See How Do I View and Send Messages?*, *supra*. Airbnb's website explains to users that "[p]aying or communicating outside of Airbnb also makes it harder for us to protect your information and puts you at greater risk of fraud and other security issues, such as phishing." *Why Should I Pay and Communicate through Airbnb Directly?*, *supra*.

Airbnb's website also describes how the company responds to law-enforcement requests for user information. *See How Does Airbnb Respond to Data Requests from Law Enforcement?*, AIRBNB, https://www.airbnb.com/help/article/960/how-does-airbnb-respond-to-data-requests-from-law-enforcement#RequestsfromUS (last visited January 26, 2018). Specifically, the company lists the following requirements for "non-emergency information requests from US law enforcement": (1) "A valid trial, grand jury or administrative subpoena is required to compel the

5

disclosure of basic subscriber records (defined in 18 U.S.C. § 2703(c)(2))"; (2) "A court order issued pursuant to 18 U.S.C. § 2703(d) is required to compel the disclosure of certain other records pertaining to an account, not including contents of communications"; (3) "For content of communications, a search warrant issued under the procedures described in the US Federal Rules of Criminal Procedure (or equivalent state warrant procedures) is required." *Id.* Airbnb makes clear its policy of notifying users of any legal process from a third party, including law enforcement, requesting user data, stating:

> Please note that Airbnb, Inc. has a policy of using commercially reasonable efforts to notify users in the United States when we receive legal process from a third party requesting user data. Generally, except where a court order (and not just the request for information itself) requires delayed notification or no notification, or except where notification is otherwise prohibited by law or where we, in our sole discretion, believe that providing notice would be futile, ineffective or would create a risk of injury or bodily harm to an individual or group, or to our property, we will endeavor to provide reasonable prior notice to the relevant user of the request for user data in the event the user wishes to seek appropriate protective relief.

*Id.* Consistent with these statements, "counsel for Airbnb represented to the government that Airbnb considered itself a provider of an electronic communication service and/or a remote computing service ('RCS') under the SCA" and "further represented that, if served with a nondisclosure order under 18 U.S.C. § 2705(b) and a subpoena that complies with the SCA, Airbnb would not challenge the applicability of 18 U.S.C. §§ 2711 and 2510." Obj. at 5.

## II.    STANDARD OF REVIEW

Magistrate judge orders issued under the SCA in unassigned criminal matters are subject to *de novo* review. *See In re Search of Information Associated with [redacted]@gmail.com That Is Stored at Premises Controlled by Google, Inc.* ("*Google*"), No. 16-mj-757, 2017 WL 3445634, at *3 n.3 (D.D.C. July 31, 2017). Specifically, under 28 U.S.C. § 636(b)(3), "[a] magistrate judge may be assigned such additional duties as are not inconsistent with the

Constitution and laws of the United States." As this matter was not "referred" to a magistrate judge by a district court judge within the meaning of § 636(b)(1)(A) or (B), the order denying the government's amended application is an exercise of the Magistrate Judge's "additional duties," pursuant to § 636(b)(3), in conjunction with this Court's Local Criminal Rules 57.17(a) and 59.3, under which magistrate judges are granted the "duty" and the "power" to "[i]ssue search warrants," as well as to "[i]ssue subpoenas . . . or other orders necessary to obtain the presence of parties or witnesses or evidence needed for court proceedings." LCrR 57.17(a)(3), (10). Accordingly, the Magistrate Judge's order is subject to *de novo* review by the district court. *See Google*, 2017 WL 3445634 at *5; LCrR 59.3(a)–(b) (directing "de novo review by the Chief Judge" of a "magistrate judge's warrant or order for which review is requested" and which arises from "a criminal matter not assigned to a district judge, as authorized by LCrR 57.17(a) and 28 U.S.C. § 636(b)(3)").

### III. DISCUSSION

To address whether Airbnb is a provider of "electronic communication services" or "remote computing services," as defined in the SCA, the applicable statutory framework is first reviewed, followed by analysis showing, consistent with the government's objection, that Airbnb is an ECS provider for the purposes of the government's amended application.

#### A. Statutory Framework

Congress enacted the SCA in 1986 as part of the Electronic Communications Privacy Act ("ECPA"), Pub. L. No. 99–508, 100 Stat. 1848 (1986).[1] The SCA regulates how stored wire and

---

[1] ECPA comprises three titles: Title I, codified in chapter 119 of Title 18, at 18 U.S.C. §§ 2510–22, "addresses the interception of wire, oral and electronic communications," amending the existing chapter 119 of title 18 "to bring it in line with technological developments and changes in the structure of the telecommunications industry"; Title II, codified in chapter 121 of Title 18, at 18 U.S.C. §§ 2701–12, is the SCA, at issue in this matter; Title III, codified in chapter 206 of Title 18, at 18 U.S.C. §§ 3121–27, "addresses pen register and trap and trace devices," requiring government entities to obtain a court order authorizing their installation. S. REP. NO. 99–541, at

electronic communications may lawfully be accessed or disclosed and imposes on covered entities certain obligations regarding the disclosure and safeguarding of customer and subscriber information.  For example, an entity that provides "an electronic communication service to the public" may not "knowingly divulge to any person or entity the contents of a communication" that the entity maintains in "electronic storage" on behalf of its customers.  18 U.S.C. § 2702(a)(1).  Entities covered by the SCA face serious penalties for violations of the Act, including actual damages of not less than $1,000 per offense, punitive damages in certain cases, up to a year's imprisonment for first offenses not committed for purposes of commercial advantage, and administrative discipline.  *See id.* §§ 2701(b)(2), 2707(a)–(d).  Thus, an entity acting on the mistaken assumption that the SCA is inapplicable does so at the peril of facing substantial consequences for mishandling customer information and communications.

The SCA's § 2703 permits the government, in specified circumstances, to compel ECS and RCS providers to disclose customer records or information, as well as the contents of their customers' stored electronic communications.  This provision's framework provides a sliding scale of protections, such that the legal mechanism law enforcement utilizes and the showing required depend on the kind of information sought.  In other words, "[t]he rules for compelled disclosure operate like an upside-down pyramid. . . . The higher up the pyramid you go, the more information the government can obtain."  Orin S. Kerr, *A User's Guide to the Stored Communications Act, and a Legislator's Guide to Amending It* ("*User's Guide*"), 72 GEO. WASH. L. REV. 1208, 1222 (2004).

A grand jury subpoena seeking records under § 2703(c)(2) may be used at the "lowest threshold" of the pyramid, s*ee id.* & n.95, to require an ECS or RCS provider to "disclose" basic

---

3 (1986), *reprinted in* 1986 U.S.C.C.A.N. 3555, 3557; *see also generally* ECPA, Pub. L. No. 99–508, 100 Stat. 1848 (1986).

subscriber account information, including a subscriber's "name," "address," "local and long distance telephone connection records, or records of session times and durations," "length of service (including start date) and types of service utilized," "telephone or instrument number or other subscriber number or identity, including any temporarily assigned network address," and "means and source of payment for such service (including any credit card or bank account number)." 18 U.S.C. § 2703(c)(2)(A)–(F). No articulation by the government of probable cause, *see id.* § 2703(a)–(b), FED. R. CRIM. P. 41, or "specific and articulable facts" showing "relevan[ce] and material[ity] to an ongoing criminal investigation," 18 U.S.C. § 2703(d), is necessary for such basic customer information to be disclosed in response to a grand jury subpoena under § 2703(c)(2).

Moreover, the government is not required to notify a customer that such information pertaining to the customer has been obtained. 18 U.S.C. § 2703(c)(3). At the same time, the government may require the recipient of the grand jury subpoena not to notify the customer only by obtaining a court order under § 2705(b) for nondisclosure. *Id.* § 2705(b) (authorizing government application for order "commanding a provider of electronic communications service . . . to whom a warrant, subpoena, or court order is directed, for such period as the court deems appropriate, not to notify any other person of the existence of the warrant, subpoena, or court order."). To obtain such an order, the government must show that disclosure to the subscriber would result in "(1) endangering the life or physical safety of an individual; (2) flight from prosecution; (3) destruction of or tampering with evidence; (4) intimidation of potential witnesses; or (5) otherwise seriously jeopardizing an investigation or unduly delaying a trial." *Id.* § 2705(b)(1)–(5).

The central question, then, is whether Airbnb is a provider of ECS or RCS such that it is covered by the SCA generally and, in particular, by §§ 2703 and 2705. The SCA defines ECS as "any service which provides to users thereof the ability to send or receive wire or electronic communications," *id.* § 2510(15), a category of provider generally understood to refer to "telephone companies and electronic mail companies," Kerr, *User's Guide*, 72 GEO. WASH. L. REV. at 1214 n.38 (citing S. REP. NO. 99–541, at 14 (1986), *reprinted in* 1986 U.S.C.C.A.N. 3555, 3568). "Electronic communication" is further defined as "any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photooptical system that affects interstate or foreign commerce." 18 U.S.C. § 2510(12). RCS, by contrast, is defined as "the provision to the public of computer storage or processing services by means of an electronic communications system," *id.* § 2711(2), with the key term "electronic communications system" further defined to mean "any wire, radio, electromagnetic, photooptical or photoelectronic facilities for the transmission of wire or electronic communications, and any computer facilities or related electronic equipment for the electronic storage of such communications," *id.* § 2510(14). The term "electronic storage" means "any temporary, intermediate storage of a wire or electronic communication incidental to the electronic transmission thereof," *id.* § 2510(17)(A), including any storage "for purposes of backup protection of such communication," *id.* § 2510(17)(B).

With technological advances since the enactment of ECPA and the SCA, the difference between ECS and RCS has eroded because "most network service providers are multifunctional" and "can act as providers of ECS in some contexts, providers of RCS in other contexts, and as neither in some contexts as well." Kerr, *User's Guide*, 72 GEO. WASH. L. REV. at 1215; *see also In re United States*, 665 F. Supp. 2d 1210, 1214 (D. Or. 2009) ("Today, most ISPs provide both

ECS and RCS; thus, the distinction serves to define the service that is being provided at a particular time (or as to a particular piece of electronic communication at a particular time), rather than to define the service provider itself."). Thus, distinguishing between ECS and RCS has been described as a "context sensitive" exercise that focuses on "the provider's role with respect to a particular copy of a particular communication, rather than the provider's status in the abstract." Kerr, *User's Guide*, 72 GEO. WASH. L. REV. at 1215 & n.48.

In this case, whether Airbnb is an ECS or RCS provider does not need to be belabored because Airbnb holds itself out to the public as an entity covered by § 2703 of the SCA and assures its customers that they are entitled to the SCA's heightened privacy protections. *See How Does Airbnb Respond to Data Requests from Law Enforcement?*, *supra* ("A valid trial, grand jury or administrative subpoena is required to compel the disclosure of basic subscriber records (defined in 18 U.S.C. § 2703(c)(2))."). Indeed, Airbnb has "represented to the government that Airbnb considered itself a provider of an electronic communication service and/or a remote computing service" under the SCA and that, "if served with a nondisclosure order under 18 U.S.C. § 2705(b) and a subpoena that complies with the SCA, Airbnb would not challenge the applicability of 18 U.S.C. §§ 2711 and 2510." Obj. at 5. The salient features of Airbnb's user-to-user electronic messaging system—the particular service at issue—confirm that, for the purposes of this matter, Airbnb is an ECS provider under the SCA.

**B.     Airbnb Is an ECS Provider for the Purposes of This Application**

Airbnb's electronic messaging system provides users with the ability to send and receive electronic communications to each other, not just to Airbnb itself, thus making the company a provider of ECS for the purposes of the government's amended application and grand jury subpoena. Moreover, Airbnb is an ECS provider despite its provision of other services that are not ECS or RCS and regardless of whether its primary business function is the provision of ECS.

11

1. *Airbnb's Messaging System Provides Users with the Ability to Send and Receive Electronic Communications*

The grand jury subpoena at issue seeks "[a]ll customer or subscriber account information for any and all accounts associated with" a particular e-mail address, including the same types of information listed in § 2703(c)(2). Notice of Filing, Attach. A, Grand Jury Subpoena ("Subpoena") at 9, ECF No. 7; *see also* Obj. at 13 (noting that the subpoena seeks "records relating to a user of Airbnb's ECS (*i.e.*, Airbnb's electronic messaging service)," namely, "the basic subscriber information described in 18 U.S.C. § 2703(c)(2) for an Airbnb user/customer, who (by virtue of his/her registration of an account with Airbnb) is a user/account holder of Airbnb's electronic messaging service"). These records are "[r]ecords concerning electronic communication service[s]" under the SCA, 18 U.S.C. § 2703(c), because every Airbnb user is, by necessity, a user of the electronic messaging system, which is an ECS.

Airbnb's messaging system allows customers and hosts to send and receive electronic messages to each other regarding potential accommodations, including questions about and images of available properties. *See How Do I Contact a Host before Booking a Reservation?*, *supra*; *How Do I View and Send Messages?*, *supra*. Such messages, which involve transfers of "writing," and often "images," "in whole or in part by a wire, radio, electromagnetic, photoelectric or photooptical system that affects interstate or foreign commerce," are "electronic communications" under the SCA. 18 U.S.C. § 2510(12). As this Court has noted, services that "facilitat[e] [ ] communication" between users typically have "features that would appear to satisfy the broad definitions of the types of providers covered by the SCA, such as allowing [ ] users the ability to send and receive electronic communications." *In re Application of the United States for an Order Pursuant to 28 U.S.C. § 1651(a) for Order Precluding Notice of Grand Jury Subpoena*, No. 17-mc-1604, 2017 WL 3278929, at *1 n.1 (D.D.C. July 7, 2017). Thus, by

providing this messaging system to its users and facilitating user-to-user communications, Airbnb is "provid[ing] to users thereof the ability to send or receive wire or electronic communications." 18 U.S.C. § 2510(15).

Notably, this determination focuses on Airbnb's provision of a user-to-user messaging service, rather than a service that merely allows users to contact or interact with the company electronically. Several courts have concluded that providing only the latter type of service does not make a company an ECS provider under the SCA, because in that situation, the company is using rather than providing ECS. *See, e.g.*, *In re Jetblue Airways Corp. Privacy Litig.*, 379 F. Supp. 2d 299, 307 (E.D.N.Y. 2005) (concluding that a company "does not become an [ECS] provider simply because it maintains a website that allows for the transmission of electronic communications between itself and its customers"); *Crowley v. CyberSource Corp.*, 166 F. Supp. 2d 1263, 1270 (N.D. Cal. 2001) (finding that an online merchant with a website allowing customers to send electronic communications only to the merchant, rather than to other customers, did not provide an ECS); *see also Keithly v. Intelius Inc.*, 764 F. Supp. 2d 1257, 1271–72 (W.D. Wash. 2011) (holding that an online information service from which customers could purchase employee background checks was not an ECS provider because it merely "use[d] electronic communications to conduct its business on the internet" and did not "provide the wire or electronic communication services utilized by its customers"); *Dyer v. Nw. Airlines Corps.*, 334 F. Supp. 2d 1196, 1199 (D.N.D. 2004) (concluding that ECS "does not encompass businesses selling traditional products or services online"); *Andersen Consulting LLP v. UOP*, 991 F. Supp. 1041, 1043 (N.D. Ill. 1998) (concluding that a company that purchased internet access from an ECS provider did not independently provide internet services to the public for the purposes of § 2702(a)(1)). Thus, because Airbnb's electronic messaging system provides users

with the ability to "send or receive wire or electronic communications" to and from each other, 18 U.S.C. § 2510(15), and because all Airbnb users are necessarily users of the messaging system, Airbnb is an ECS provider for the purposes of this matter.

### 2. *Airbnb Is an ECS Provider Regardless of Its Primary Business Function*

The fact that Airbnb provides an ECS, and that the government seeks records pertaining to that ECS, is enough to warrant granting the government's application. The provision of such services does not need to be Airbnb's primary business function in order for the ECS portion of its business to be covered by the SCA. Indeed, "[t]he language chosen by Congress [in defining ECS] captures *any service* that stands as a conduit for the transmission of wire or electronic communications from one user to another" and makes no reference to whether the service at issue is a primary business function or is merely ancillary to support a business function. *Council on Am.-Islamic Relations Action Network, Inc. v. Gaubatz*, 793 F. Supp. 2d 311, 334 (D.D.C. 2011) (internal quotation marks and citation omitted) (emphasis added); *see also* S. REP. NO. 99-541 at 14, *reprinted in* 1986 U.S.C.C.A.N. at 3568 ("Existing telephone companies and electronic mail companies are providers of electronic communication services. Other services like remote computing services may also provide electronic communication services."). Rather, the statutory definitions of ECS and RCS are functional and context sensitive: "the key is the provider's role with respect to a particular copy of a particular communication, rather than the provider's status in the abstract." Kerr, *User's Guide*, 72 GEO. WASH. L. REV. at 1215; *see also In re United States*, 665 F. Supp. 2d at 1214 (noting that in determining whether an entity provides ECS or RCS, courts should attempt to define "the service that is being provided at a particular time (or as to a particular piece of electronic communication at a particular time), rather than to define the service provider itself").

Thus, as numerous courts have held, an entity that provides ECS or RCS as only one part of its business is still covered by the SCA. *See, e.g.*, *Fraser v. Nationwide Mut. Ins. Co.*, 352 F.3d 107, 114–15 (3d Cir. 2003) (concluding that an insurance company that provided an e-mail service to its employees was an ECS provider); *United States v. Mullins*, 992 F.2d 1472, 1478 (9th Cir. 1993) (concluding that a travel agency that provided its travel agents with computer terminals running an electronic travel reservation system was an ECS provider); *Becker v. Toca*, No. 07-7202, 2008 WL 4443050, at *4 (E.D. La. Sept. 26, 2008) (concluding that "an online business or retailer may be considered an [ECS] provider if the business has a website that offers customers the ability to send messages or communications to third parties"); *Bohach v. City of Reno*, 932 F. Supp. 1232, 1236 (D. Nev. 1996) (concluding that a city whose police department provided computers, software, and pagers to its personnel was an ECS provider); *see also Kaufman v. Nest Seekers, LLC*, No. 05-6782, 2006 WL 2807177, at *6 (S.D.N.Y. 2006) ("An on-line business which provides its customers, as part of its commercial offerings, the means by which the customers may engage in private electronic communications with third-parties may constitute a facility through which electronic communication service is provided."). A company also does not have to provide an ECS to the public to fall under the SCA; it is enough that the company provides an ECS to its own customers. *See Council on Am.-Islamic Relations Action Network*, 793 F. Supp. 2d at 334 ("Congress drafted Section 2701(a) broadly, and providing an electronic communication service to the public is not part of the statutory inquiry.") (internal quotation marks and citation omitted). Accordingly, for the purposes of this matter and the corresponding grand jury subpoena, Airbnb provides an ECS—namely, an electronic, user-to-user messaging system—and therefore falls within the auspices of § 2705(b).

### 3.  *Airbnb Holds Itself Out to Its Customers As an ECS Provider*

Finally, the fact that Airbnb views its own services as ECS or RCS is instructive.  As already discussed, Airbnb holds itself out to its customers as an entity that is regulated by the SCA.  *See How Does Airbnb Respond to Data Requests from Law Enforcement?*, *supra*; Obj. at 5.  In doing so, Airbnb emphasizes to its current and potential customers that their information is subject to the heightened privacy protections of the SCA and assures them that Airbnb abides by the strictures of that law in handling electronic information.  While this declaration does not, by operation of law, make Airbnb an ECS provider, that a company concedes being subject to a statutory regime and its attendant penalties is telling.

### IV.  CONCLUSION

For the reasons stated above, the government's objection is sustained, the Magistrate Judge's Order dated December 22, 2017, is reversed, and the government's amended application for an order pursuant to 18 U.S.C. § 2705(b) is granted.  The government is directed, by February 2, 2018, to review this Memorandum Opinion and the entire record in this matter and advise the Court of which docket entries may be unsealed in whole or in part, with proposed redactions as necessary to protect any ongoing criminal investigations.  An appropriate Order, which is filed under seal, accompanies this Memorandum Opinion.

Date: January 29, 2018

_____
BERYL A. HOWELL
Chief Judge